# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| YESSENIA RAMOS, | § | |
| | § | |
|    *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-17-2852 |
| | § | |
| PERFORMANCE CONTRACTING INC., | § | |
| | § | |
|    *Defendant*. | § | |

### MEMORANDUM OPINION AND ORDER

Pending before the court is defendant Performance Contracting Inc.'s ("PCI") motion for partial reconsideration (Dkt. 46) and motion to dismiss (Dkt. 47). After considering the motion and applicable law, the court is of the opinion that both of PCI's motions should be DENIED.

### I. BACKGROUND

This is a Title VII sexual harassment and retaliation case. PCI previously filed a motion for summary judgment on all of plaintiff Yessenia Ramos's claims. Dkt. 32. The court granted summary judgment on Ramos's sexual harassment claim, but denied it with respect to Ramos's retaliation claim. Dkt. 45. PCI now moves for the court to reconsider its denial of summary judgment on the retaliation claim. Dkt. 46. PCI also filed a new motion to dismiss for lack of subject matter jurisdiction. Dkt. 47.

### II. ANALYSIS

**A. Motion for Partial Reconsideration**

The court previously denied PCI's motion for summary judgment on Ramos's retaliation claim based on: (1) Ramos's assignment to the night shift; and (2) Ramos's reassignment to hard labor tasks. Dkt. 45. Both of these changes occurred after Ramos reported that she had been

sexually harassed by a supervisor in August 2016. *Id.* PCI again challenges the veracity of both claims.

1. *Standard of Review*

Federal Rule of Civil Procedure 59(e) governs a motion to amend a final judgment when the motion is filed within twenty-eight days of the contested judgment. Fed. R. Civ. P. 59(e). However, Rule 54(b) governs motions to reconsider orders that do not dispose of every claim or adjudicate the rights of all parties to a case. Fed. R. Civ. P. 54(b); *Cabral v. Brennan*, 853 F.3d 763, 766 (5th Cir. 2017); *see also Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 474–75 (M.D. La. 2002). Here, the court considers PCI's motion under Rule 54(b), not Rule 59(e), because the court's summary judgment order preserves some of Ramos's claims.

An order governed by Rule 54(b) "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). The court has broad discretion to revise orders under Rule 54(b), and the standard of review for a Rule 54(b) motion is "typically held to be less exacting" than the standard for Rule 59(e) motions. *Livingston Downs Racing Ass'n*, 259 F. Supp. 2d at 475. Thus, "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)).

2. *Night Shift Assignment*

First, PCI argues that Ramos's reassignment to the night shift after the August 2016 complaint was not retaliatory because Ramos had previously worked the night shift when she first started working for PCI. Dkt. 46 at 3–4. However, this fact is irrelevant. Ramos worked the day

shift at the time she filed her August 2016 complaint, and PCI acknowledges that Ramos was reassigned to the night shift following that complaint. *Id.* at 4. The mere fact that Ramos had worked the night shift some time before is irrelevant to Ramos's allegations that her reassignment to a less desirable shift occurred because she filed a harassment complaint.

PCI also argues that there was no "threat" that Ramos would actually have to work the night shift again because she was immediately placed back on the day shift upon request. *Id.* However, the court explicitly addressed this fact in its previous order and still found that a reasonable employee in Ramos's situation could have been dissuaded from making a complaint under governing Fifth Circuit precedent. Dkt. 45 at 12. PCI's argument fails.

3. *Timing of Retaliatory Acts*

Second, PCI argues that neither of PCI's alleged actions could have been retaliatory because Ramos filed a discrimination charge with the EEOC in November 2016, after the acts occurred. Dkt. 46 at 4. Put differently, because the alleged actions did not actually dissuade Ramos from engaging in additional protected activity, PCI argues that they are not actionable under Title VII.

However, PCI's position is untenable for several reasons. At the outset, this argument conflicts with the plain language of the Supreme Court's test for material adverse actions. A retaliatory action is materially adverse and actionable under Title VII when "it well might have dissuaded a *reasonable* worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405 (2006) (emphasis added). Under this objective inquiry, a reasonable worker might be dissuaded even if any one particular worker is not. PCI, however, would transform this objective inquiry into a subjective one: a retaliatory action would be material only if it actually, subjectively dissuaded *this particular worker* from reporting discrimination. Thus, PCI's position directly conflicts with established precedent.

3

Accordingly, PCI does not produce any controlling case law to support its position. Rather, PCI principally relies on the Fifth Circuit's unpublished opinion in *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 442 (5th Cir. 2007).[1] In *DeHart*, the court held that a written warning was not materially adverse when there were "colorable grounds" for the warning, a reasonable employee would have understood that a warning under the circumstances was not retaliatory, and the plaintiff was not actually dissuaded from filing a discrimination charge. *Id.* PCI therefore contends that, as a matter of law, retaliatory actions cannot be material if they precede a discrimination charge. Dkt. 46 at 4–5.

However, this argument "defies logic." *Turrentine v. United Parcel Serv., Inc.*, 645 F. Supp. 2d 976, 989 (D. Kan. 2009). "[E]very plaintiff asserting a claim of retaliation has, by virtue of Title VII's exhaustion requirements, necessarily filed a charge of discrimination concerning the allegedly retaliatory act." *Id.* The fact that a plaintiff filed a discrimination charge after the retaliatory acts, then, cannot be dispositive. At most, *DeHart* stands for the proposition that a plaintiff's pursuit of her remedies might be a relevant factor, in some circumstances, in determining whether an employer's actions were materially adverse. *See id.*; *see also McDaniel v. Shell Oil Co.*, No. H-07-808, 2008 WL 11389438, at *26–*27 (S.D. Tex. Dec. 22, 2008) (Gilmore, J.) (citing *DeHart* in holding that an employee's reprimand was not materially adverse "based on the particular circumstances of this case"). The court is not convinced that such circumstances exist here.

---

[1] PCI also relies on two cases in which the plaintiff had not engaged in *any* protected activity prior to some, if not all, the alleged retaliation. Dkt. 46 at 4 n.5 (citing *Watkins v. Tex. Dep't of Criminal Justice*, 269 F. App'x 457, 461 (5th Cir. 2008) and *Fallon v. Potter*, 277 F. App'x 422, 426 (5th Cir. 2008)). In those cases, the plaintiff clearly could not show causation as to those alleged retaliatory acts that occurred prior to protected activity. Here, however, the court has already determined that Ramos engaged in protected activity prior to all of PCI's alleged retaliatory acts. Dkt. 45 at 10.

Additionally, PCI's argument directly conflicts with a major policy objective of Title VII. "[A] primary purpose of antiretaliation provisions," such as the one in Title VII, is to "maintain[] unfettered access to statutory remedial mechanisms." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346, 117 S. Ct. 843 (1997). This purpose is defeated if, as a matter of law, an employee destroys her Title VII retaliation claims by engaging in statutory remedial mechanisms after the alleged retaliatory acts. Therefore, PCI's argument fails and its motion for partial reconsideration (Dkt. 46) is DENIED.

**B. Motion to Dismiss**

PCI also moves to dismiss Ramos's retaliation claim for failure to exhaust administrative remedies. Dkt. 47. PCI argues that Ramos's EEOC discrimination charge does not adequately allege either instance of retaliation. *Id.* However, the deadline for dispositive motions in this case was November 15, 2018. Dkt. 20. PCI did not file the pending motion to dismiss until April 24, 2019. Dkt. 47. PCI attempts to avoid timeliness issues by bringing a Rule 12(b)(1) motion challenging the subject matter jurisdiction of the court, which can be brought at any time. *Id.* at 2. However, administrative exhaustion under Title VII is not a jurisdictional defect in this circuit. *Davis v. Fort Bend Cty.*, 893 F.3d 300, 305 (5th Cir. 2018), *cert. granted* 139 S. Ct. 915 (2019). PCI itself expressly acknowledges this fact. Dkt. 47 at 3. PCI's motion to dismiss is therefore DENIED as untimely.

### III. CONCLUSION

Accordingly, PCI's motion for partial reconsideration (Dkt. 46) is DENIED. PCI's motion to dismiss (Dkt. 47) is also DENIED.

Signed at Houston, Texas on May 3, 2019.

_____
Gray H. Miller
Senior United States District Judge

5